## UNTERMYER v. BOWERS.*
### No. 426.

Circuit Court of Appeals, Second Circuit.
July 8, 1935.

See, also, 7 F. Supp. 347.

Guggenheimer & Untermyer, of New York City (Eugene Untermyer and Harry Hoffman, both of New York City, and Edgar J. Goodrich, of Washington, D. C., of counsel), for appellant.

Martin Conboy, U. S. Atty., of New York City (Edward J. Ennis, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is in an action to recover from the collector income taxes unlawfully

*Writ of certiorari denied 56 S. Ct. 174, 80 L. Ed. ——.

collected for the year 1919; it is from a judgment dismissing the third amended complaint for insufficiency in law upon its face. On September 18, 1930, the plaintiff took out his writ, and two days later he served it with a complaint which he first amended on October 4, 1932, and again on January 26, 1933. This complaint was in two counts; the first, for money had and received in the sum of $29,497.30; the second, having been abandoned, we may disregard. On a motion for judgment on the pleadings the judge held the first count bad because it did not allege that the plaintiff had not owed as taxes the payment which he asked to recover, or what was his true income for 1919, or what the proper tax. It merely alleged that the collector had compelled the plaintiff to pay an excessive amount, and that the commissioner conceded that there had been an overpayment; it had pleaded evidence or legal conclusions, not "ultimate facts." Thereupon the plaintiff, retaining the first and second counts as they were, amended again by adding a third and fourth. In the third he repeated all that he had said in the first, and added those formal allegations which had been missing; the fourth count was for the conversion of a check drawn by the commissioner in the plaintiff's favor. A second judge dismissed all four counts for insufficiency, and the plaintiff appealed.

The facts as set forth are in substance as follows: On March 14, 1919, the plaintiff filed a tentative income tax return for the year 1918, showing a tax due of $25,-000, which he later corrected so as to show a net loss for the year. The time to assess having been extended by waiver, the commissioner in March, 1924, imposed an additional assessment of $127,000, against which the plaintiff protested and appealed to the Income Tax Bureau. The collector made the usual demand on May 22d, but on October 3d credited against the deficiency over $41,000, so as to leave only $85,270. He distrained for this on March 28, 1927, but on June 8, 1929, the commissioner abated the deficiency, which had been reduced to $49,522 by the application of the sum of $29,497.30, which had been allowed as a refund for another year. It is the application of that amount to that deficiency, whose validity was never determined, which is the subject of this action.

The refund arose as follows: On April 13, 1920, the plaintiff filed his return for the year 1919, showing a liability of about $18,600, upon which he claimed the refund of a payment made upon his original tentative return for 1918; this tax he paid. The commissioner assessed him for a deficiency of $88,900 for that year, which he paid on June 3, 1924, and for $35,700 of which he filed a claim for refund on March 11, 1925. This claim the commissioner allowed on March 25, 1926, by the usual certificate of overassessment which the collector delivered to the plaintiff on that date, at the same time advising him that a check in the sum of $29,497.30 with interest of $3,179.65 had been drawn by the Treasury in his favor, which the collector was holding. In order to release this check the plaintiff was required to declare that there were no outstanding internal revenue taxes due from him, and this he refused to do. On July 2, 1926, the collector wrote the plaintiff that he was returning this check to the commissioner to be applied against the outstanding deficiency for 1918, which he did on August 31, 1926. On April 10, 1928, the plaintiff filed a second claim for refund of $35,665.42 for the year 1919, substantially the amount of his first claim, which the commissioner rejected on September 24, 1928. The action was brought within two years thereafter, as already appears. The question is, whether to the extent of the check, $29,487.30, and interest, the plaintiff can recover upon the rejection of the second claim.

The erroneous payment on which the action rests having been made June 3, 1924, the five years' limitation for suit expired on June 3, 1929; so that the plaintiff can recover only in case his time was extended by the claim for refund of April 10, 1928, rejected on September 24, 1928, Rev. St. § 3226, as amended, 26 USCA § 156. If either the collector's letter of July 2, 1926, or his credit in August of the check upon the deficiency of 1918, was a rejection of the only permissible claim, the suit is barred. The plaintiff can succeed on one of two theories. Either the credit of the check against the 1918 deficiency was not a rejection of the first claim, or it was lawful to file a second claim within four years after payment of the tax (section 284 (b) (1), Revenue Act 1926, 26 USCA § 1065 (b) (1), and to sue within two years after its rejection. The Court of Claims held in B. Altman & Co. v. U. S., 40 F.(2d) 781, that after rejection the taxpayer might not so extend his time by another claim, in a case where the grounds of both claims were the

same, and where there was therefore no excuse for the second. In Pacific Mills v. Nichols (C. C. A.) 72 F.(2d) 103, the First Circuit added a gloss that the taxpayer might within the period of limitation file a new claim based upon new grounds; and this distinction the Court of Claims had itself recognized in Hills v. U. S., 50 F.(2d) 302, 303. In the case at bar perhaps the claim of March 11, 1925, was, strictly speaking, never rejected at all; by treating it as a credit the commissioner did not recede from his allowance of it; he used it as a payment. That use was indeed unlawful, "an erroneous collection" (Graham & Foster v. Goodcell, 282 U. S. 409, 424, 51 S. Ct. 186, 75 L. Ed. 415; but it was nevertheless a payment. However, de facto the claim was rejected because the plaintiff did not get what he asked, his money; we shall assume arguendo that it was rejected de jure. But we can see no reason why the plaintiff might not file a second claim within the statutory period, except one which we reserve for the moment. The ground of his second claim was not, it is true, the original taking—on that he had succeeded—it was the commissioner's subsequent refusal to return what he conceded to have been unlawfully taken. Certainly the plaintiff could not foresee that having so conceded, he would unlawfully refuse to make amends; indeed that he could not have so alleged, because the commissioner had not then refused. An action for money had will lie as well upon a refusal as upon a tortious taking, and as the claim for refund is merely to allow the Treasury to prepare its defense, it must be possible to meet the condition precedent to such an action by such a claim.

■ The possible objection is this: The taxpayer, by accepting the certificate of overassessment, agreed to an account stated between himself and the United States; only on this theory may he sue the United States. United States v. Kaufman, 96 U. S. 567, 570, 24 L. Ed. 792; United States v. Real Estate Savings Bank, 104 U. S. 728, 26 L. Ed. 908; Bonwit Teller & Co. v. U. S., 283 U. S. 258, 265, 51 S. Ct. 395, 75 L. Ed. 1018. Hence it might be argued that the statement of the account was a discharge of the liability upon which it was founded; i. e., the unlawful collection on June 3, 1924, on which alone an action will lie against the collector, because a taxpayer, if he sues upon the account stated, must sue the United States. But this is an error, for normally an account stated is no more than any other accord, and an accord must be followed by satisfaction to be a good bar. Restatement, Contracts, § 417 (c). And when the debtor has repudiated the accord, the creditor may rescind and sue upon the debt. It is true that the accord itself may be a satisfaction; the parties may mean to make the new liability a payment for the old; but this is not the ordinary understanding, and there is no ground for imputing such a mutual purpose to a certificate of overassessment. Thus the suggested defense fails.

■ Nevertheless we agree with the district judge who granted the motion to dismiss the second amended complaint. The allegations of the first count were and are formally insufficient, for the reasons given by him. But the effect, the gist, of the count was entirely apparent, and we cannot agree with the second judge who refused to allow the amendment set up in the third count; the cause of action had not been changed. The amendments were no more than an amplification of the first inartificial efforts of the pleader; and as an addition to the first count or in a new count were allowable even after the period of limitations had expired. The fourth count was bad because the check had never been delivered and was not the plaintiff's property until it had been. Daube v. U. S., 289 U. S. 367, 372, 53 S. Ct. 597, 77 L. Ed. 1261.

Judgment affirmed on the first, second, and fourth counts. Judgment reversed on the third count.