## WHITE, FORMER COLLECTOR, *v.* ARONSON.

No. 20. Argued October 20, 1937.—Decided November 8, 1937.

*Mr. Paul A. Freund, pro hac vice,* with whom *Solicitor General Reed, Assistant Attorney General Morris,* and *Mr. Sewall Key* were on the brief, for the petitioner.

The argument for respondent was opened by *Mr. Israel Gorovitz* and closed by *Mr. Samuel Gottlieb.*

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

Respondent, Aronson, trustee in bankruptcy of The Viking Manufacturing Company, Inc., brought suit in the United States District Court for Massachusetts to recover $37,021.63 exacted of the bankrupt by the Collector, under color of § 609 Revenue Act 1932,[1] c. 209, 47 Stat. 264, on account of jigsaw picture puzzles manufactured and sold from June 21, 1932, to May 1, 1933.

The puzzles were made by cutting selected pictures backed up by rigid cardboard into from 162 to 500 separate pieces. These were sold to those who found diversion or amusement in putting them together so as to reproduce the original picture.

Obviously the word "games" in the statute was intended to designate instrumentalities used in playing them.

The Collector maintained that the effort properly to arrange the pieces was for amusement or diversion and amounted to a game, within the appropriate definition of the word.[2] Accordingly, he said, these instrumentalities were taxable.

---

[1] Revenue Act 1932. Sec. 609. Tax on Sporting Goods.

"There is hereby imposed upon the following articles, sold by the manufacturer, producer, or importer, a tax equivalent to 10

18

On the other hand, respondent insisted that the word "games" refers to contests, physical or mental, conducted according to set rules, undertaken for amusement or recreation or for winning a stake, requiring the participation of two or more persons;[2] also that the sundry pieces were parts of a puzzle, a contrivance designed for testing ingenuity—something not within the scope of the statute.[3]

The trial judge, having heard the cause upon pleadings and evidence without a jury, sustained the Collector's defense. The Circuit Court of Appeals concluded otherwise and directed judgment for the trustee. It said—

"The section [609] is headed 'Tax on Sporting Goods.' The articles or instrumentalities there specifically named are sporting goods whether they are used in connection with games or in some recreation or diversion other than a game. But the larger portion of the articles specifically named are all used in games of contest between two

---

per centum of the price for which so sold: Tennis rackets, tennis racket frames and strings, nets, racket covers and presses, skates, snowshoes, skis, toboggans, canoe paddles, polo mallets, baseball bats, gloves, masks, protectors, shoes and uniforms, football helmets, harness and uniforms, basket ball goals and uniforms, golf bags and clubs, lacrosse sticks, balls of all kinds, including baseballs, footballs, tennis, golf, lacrosse, billiard and pool balls, fishing rods and reels, billiard and pool tables, chess and checker boards and pieces, dice, games and parts of games (except playing cards and children's toys and games); and all similar articles commonly or commercially known as sporting goods."

[2] Webster's New International Dictionary, 2d ed., gives the word "game" 17 definitions. "2 a An amusement or diversion; as, make-believe is a children's *game;* formerly, specif., amorous play, 'Daughters of the *game.*' Shak." "4. A contest, physical or mental, conducted according to set rules, and undertaken for amusement or recreation, or for winning a stake * * *."

[3] "Puzzle. 2. Something which perplexes or embarrasses; a difficult problem or question; an enigma; hence, a toy, contrivance, question, or problem designed for testing ingenuity; as, a crossword *puzzle.*" Webster's New International Dictionary, 2d ed.

or more persons, and the question of construction is whether the articles or instrumentalities intended to be covered by the phrase 'games and parts of games' mean articles or instrumentalities used in games of contest like the specific articles previously named in the section, which are used in games of tennis, polo, baseball, etc., all of which involve a contest. . . .

"Furthermore the particular article here sought to be taxed is a puzzle. A puzzle is defined as 'something which perplexes or embarrasses; a difficult problem or question; hence a toy, contrivance, question or problem designed for testing ingenuity; as a cross word puzzle.' Webster's New International Dictionary. A jigsaw picture puzzle comes squarely within this definition—'a contrivance . . . designed for testing ingenuity.' None of the articles specifically named in the statute and used in games is a contrivance designed for testing ingenuity. They are designed for use in games of contest, while a jigsaw puzzle is not."

Section 600 (f), c. 63, 40 Stat. 316, Revenue Act 1917, and § 900 (5), c. 18, 40 Stat. 1122, Revenue Act 1918, (repealed in 1921) laid a tax upon tennis rackets, golf clubs, baseball bats, etc., . . . "chess and checker boards and pieces, dice, games and parts of games." Jigsaw picture puzzles were then well known articles of commerce. They go back at least to the first part of the last century—perhaps much farther. The same words "games or parts of games" appear again in the like section—609— Revenue Act 1932.

The court below pointed out that—

" A jig saw puzzle was never taxed under Section 900 (5) of the Act of 1918. It was not taxed until after the passage of Section 609 of the Revenue Act of 1932, when the Government attempted to tax it as a game. The Act of 1932 became effective June 6, 1932. On August 26, 1932, the Commissioner issued a ruling stating that

jig saw or die cut picture puzzles were not taxable. On November 14, 1932, he issued a ruling that they were taxable. On February 7, 1933, he ruled that after February 7, 1933, they were taxable if they contained more than fifty pieces. And on April 20, 1933, he ruled that they were taxable after June 21, 1932, if they contained more than fifty pieces."

Ample evidence disclosed that in commercial usage jigsaw picture puzzles were never regarded as games; also that the trade recognized a definite distinction between puzzles and games. We must assume that Congress had knowledge of these things; also knew that jigsaw picture puzzles were not assessed for taxes under the Acts of 1917 and 1918; and, further, was not unmindful of the uncertainties concerning the meaning of "game" disclosed by *Baltimore Talking Board Co.* v. *Miles,* 280 Fed. 658, and *Mills Novelty Co.* v. *United States,* 50 F. (2d) 476.

The claim for the taxpayer here does not rest upon an exception to a general rule but upon construction of general language found in the Act.

The Circuit Court of Appeals rightly concluded that— "The words 'games and parts of games' bring into the list of taxables only such other articles as are used in games of contest, the same as those particularly named are and with which they are closely associated."

Certainly we cannot say that this construction was clearly erroneous. Other judges had accepted it. Nor can we affirm that the statute as framed gave adequate notice to the bankrupt that its puzzles were to be taxed.

Where there is a reasonable doubt as to the meaning of a taxing Act it should be construed most favorably to the taxpayer. *Gould* v. *Gould,* 245 U. S. 151. "Tax laws, like all other laws, are made to be obeyed. They

should therefore be intelligible to those who are expected to obey them." *Philadelphia Storage Battery Co.* v. *Lederer,* 21 F. (2d) 320, 321, 322.

Counsel for the Collector maintain that *Baltimore Talking Board Co.* v. *Miles* (1922), *supra,* the "Ouija Board" case, and *Mills Novelty Co.* v. *United States,* (1931), *supra,* "Coin Operated Gambling Machine" case, are in conflict with the ruling under review.

These causes involved the Act of 1918 and in both the judges expressed sharply opposing views. Of course, the general language of the opinions must be read in connection with the facts.

The ouija board is wholly different from the puzzle here under consideration; nothing indicates that it was commonly regarded by the trade as a puzzle; and in an application for a patent it had once been described as a game. If the opinion construes the statute as embracing all instrumentalities, not necessary for comfort, whose chief use is to afford amusement and diversion, it is obviously too broad. Knitting for diversion is not a "game"; nor is horseback riding.

The coin-operated gambling machine has no resemblance to a jigsaw picture puzzle and what was said concerning it is not helpful in the problem now before us.

Both of these causes were decided prior to the Act of 1932 in which the words of the 1918 Act were repeated notwithstanding the disclosed uncertainties concerning their meaning and with knowledge of the fact that theretofore puzzles had not been assessed for taxation under them.

The challenged judgment must be

*Affirmed.*

Mr. Justice Stone and Mr. Justice Cardozo concur in the result.