**Charles N. HAVERLY and Ruth L. Haverly, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 73 C 783.**

United States District Court, N. D. Illinois, E. D.

Jan. 9, 1974.

Ronald S. Supena, Chicago, Ill., for plaintiffs.

James W. Littlefield, Tax Div., U. S. Dept. of Justice, for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

This action has been brought by plaintiff taxpayers for the recovery of certain income taxes paid to the United States Government. The jurisdiction of the court is asserted under 28 U.S.C. § 1346(a). The parties have entered into a stipulation of uncontested facts and have submitted their arguments on the legal question involved on briefs. For the reasons set forth below, judgment will be entered in favor of the plaintiff.[1]

During the years 1967 and 1968, plaintiff Charles N. Haverly was the principal of a public elementary school in the City of Chicago. During each of those two years, textbook publishers sent plaintiff unsolicited sample copies of their publications. For each of those years, all the textbooks received had an aggregate fair market value at the time of receipt of $200.

The purpose of sending the samples was to provide plaintiff with an opportunity to study the books to determine whether or not they might fit the purposes of the instructional units in his curriculum. No controls whatsoever were put on the use to which plaintiff might put the texts. He was free to keep them or dispose of them as he saw fit. The parties have agreed that they were not intended to provide plaintiff with compensation for anything he had done in the past or would do in the future for the publishers. The books

---

1. Ruth L. Haverly is a plaintiff in this action solely because the Haverlys filed a joint tax return. Consequently, the designation "plaintiff" will refer to Charles N. Haverly.

were in effect free samples of a product which the senders hoped plaintiff would recommend or purchase.

The parties have also agreed that the books were not gifts within the meaning of § 102 of the Internal Revenue Code of 1954,[2] as the clear motive of the publishers in sending the samples was their hope that the texts would receive favorable consideration, and that plaintiff might then order them for use at his school.

In 1968, plaintiff made a contribution of these books to the library of the school where he was principal. The transfer was without restriction and the defendant concedes that plaintiff was entitled to a charitable contribution deduction under § 170 of the Internal Revenue Code in the amount of $400, the value of the books at the time they were contributed.

In reporting his taxable income for the year 1968, plaintiff did not include the value of the textbooks received and donated during that year in his gross income, but did deduct the value of the books as a charitable contribution. Following an audit of his 1968 return, the Internal Revenue Service increased plaintiff's taxable income by the value of the textbooks, and assessed a deficiency in the amount of the tax resulting therefrom. Plaintiff paid the amount of the deficiency, filed a claim for a refund, and subsequently commenced this action to recover that amount.

The question raised is whether an individual has income when he receives and accepts unsolicited samples such as these textbooks. The position of defendant is that once a person "manifests an intent on his part to accept such property" it is properly classified as taxable income. (Defendant's brief, p. 5). Here, defendant argues, the claiming of the charitable contribution deduction on the income tax return evidences the requisite intent to accept the property, and therefore the value of the texts is includable in plaintiff's gross income. Plaintiff, on the other hand, contends that unsolicited samples cannot be considered income at any point. They are not, he urges, income when they are received, and they cannot be transformed into income by a particular subsequent use or disposition.

We find that the samples in question do not constitute income. Even if we had any doubt about the matter, we would have to follow the well-settled rule that, when doubt arises as to the taxability of an item, it must be resolved in favor of the taxpayer. Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L. Ed. 211 (1917); Dunbar v. Commissioner of Internal Revenue, 119 F.2d 367 (7th Cir. 1941); Commissioner of Internal Revenue v. Swift & Co. E. B. A., 151 F.2d 625 (7th Cir. 1945).

First, it is clear that unsolicited samples do not fall within any of the specifically enumerated categories of the income sections of the Internal Revenue Code ("Code"). Section 61(a) of the Code provides:

Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: .

(1) Compensation for services, including fees, commissions, and similar items;

(2) Gross income derived from business;

(3) Gains derived from dealings in property;

(4) Interest;

(5) Rents;

(6) Royalties;

(7) Dividends;

(8) Alimony and separate maintenance payments;

(9) Annuities;

(10) Income from life insurance and endowment contracts;

2. All references to sections of the Internal Revenue Code are to the 1954 Code, as amended.

(11) Pensions;

(12) Income from discharge of indebtedness;

(13) Distributive share of partnership gross income;

(14) Income in respect of a decedent; and

(15) Income from an interest in an estate or trust.

We are mindful of the caveat contained within the statute that the listing is not exclusive, as well as the rulings of the Supreme Court that § 61(a) expresses a Congressional intent to exert "the full measure of its taxing power," Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955); Helvering v. Clifford, 309 U.S. 331, 334, 60 S.Ct. 554, 84 L.Ed. 788 (1940); Helvering v. Midland Ins. Co., 300 U.S. 216, 57 S.Ct. 423, 81 L.Ed. 612 (1937) (construing language in one of § 61(a)'s predecessors). However, the finding of an intent to tax *all* income, "from whatever source derived," does not resolve the question of what constitutes income in the first place; and the categories contained in the statute itself are instructive of the types of things that are so considered. Unsolicited samples are not even arguably similar to any of the enumerated items.

Second, we can find no authority in any legal precedent which would support defendant's categorization of the samples as income. Neither our own research nor that of the parties has uncovered any ruling which even considers the issue of treating samples as income.

All of the cases cited by defendant are inapposite. The government's reliance on Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960) is totally misplaced. That case dealt entirely with the issue of the definition of a "gift" as that term is used in § 22(b)(3) of the Internal Revenue Code. Here, the parties have stipulated that the sample textbooks were *not* gifts. Furthermore, the conclusion in *Duberstein* that the auto-

mobile was income, rather than a gift, was bottomed on a finding that it represented compensation to Duberstein for past services, and an inducement to be of further service in the future. 363 U.S. at 292. Compensation for services is one of the specifically enumerated items of income in § 61(a). Here, the parties have also stipulated that the textbooks did not represent compensation to the plaintiff. Neither any language in nor any implications of the *Duberstein* opinion have any bearing on the issue of the definition of income *per se*.

Similarly, both the *Clifford* and *Midland Ins. Co.* cases, *supra*, dealt with questions of whether certain receipts fell within specifically enumerated categories of income contained in the Code, and are irrelevant to the determination of whether a category of items, which concededly does not fall within any of those enumerated provisions, constitutes income.

Finally, *Glenshaw Glass*, *supra*, cannot support defendant's position either. There, the Court dealt with the question of whether money received as exemplary damages for fraud, and the punitive two-thirds portion of a treble damage antitrust recovery must be reported as gross income. The Court's holding that such receipts, which were specifically requested and avidly pursued by the parties involved, did constitute taxable income has no bearing on the question before this court which deals with receipts which were completely involuntary and which would require positive action on the part of the recipient to avoid.

Third, we are not persuaded by defendant's use of Revenue Ruling 70–498, as an appropriate analogy. That ruling provides that the value of books accepted by a book reviewer during his employment with a newspaper and donated by him to a charitable organization is includable in his gross income. This ruling suffers the same infirmity as the government's position in this case, as discussed below. Moreover, to the extent that a reviewer utilizes such books

in his business, they constitute tools of his trade and are distinguishable from the book samples here involved.

█ Defendant concedes that income cannot be foisted upon an individual involuntarily, and recognizes that that is exactly the situation for the vast majority of unsolicited samples that are sent to people not only in plaintiff's position, but to consumers of all kinds: housewives, doctors, lawyers, book reviewers, retailers, etc. They are not considered income both because of their usually negligible value, and because of the inequity or requiring the unwitting and involuntary recipient to take positive action to avoid such receipts in order to avoid tax consequences. It simply does not comport with the notions underlying the tax laws to treat as income something the taxpayer never asked for, may not want, and which may require considerable effort to avoid or return.

However, perhaps bothered by the fact that certain of these unsolicited samples can be used by the recipient to take advantage of other provisions in the tax laws such as the charitable contribution deduction, the government feels that certain of those items must be construed as income. The taxpayer, it urges, cannot have his cake and eat it too. The proposed line to be drawn between "involuntary" and "voluntary" receipts is that the item will not be considered income unless the recipient "manifests an intent . . . to accept such property." Apparently, however, the only act deemed by the Service to manifest the requisite intent is the act of claiming a charitable contribution deduction. Certainly such an act does evidence an intent to accept the property as one's own. The problem is that such an intent is equally as clearly evidenced when the housewife uses the detergent sample for the family wash, or when the book reviewer takes the book for his own personal library, or when the store customer swallows the new brand of cracker being promoted, or when the school principal donates his sample texts to the school library *without* claiming any deduction, or when a judge receives books from a publisher and puts them on the shelves in his chambers for possible future reference.

Obviously, in terms of the government's own standard, these other situations are indistinguishable. The Internal Revenue Service is forced to ignore this inconsistency, however, because of the absurdity of labeling all these items as "income." In practice, this inconsistent treatment may not present tax problems because the value of most samples is so negligible that no one claims a deduction for them even if they are donated to charitable institutions. But clearly a distinction based on the value of the sample, or on the particular way in which a recipient converts it to his or her own use, is not acceptable as a matter of law based on any applicable tax provision, precedent or logic. In the absence of a Congressional directive otherwise, *all* unsolicited samples must either be considered income or not income and we find they are not income. If it would be more equitable to make distinctions as to tax treatment based on an item's value, its subsequent disposition, or the manner in which it was acquired, that is a matter for the Congress to decide, not the courts.

Since there is no basis for the position that Congress intended to tax, as income, every unsolicited sample that is received and accepted by a taxpayer, we must grant plaintiff's motion for summary judgment. Defendant's motion for summary judgment will be denied. An appropriate order will enter.